UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BURD, BRYAN EDWIN and | ) | Case No. 16-11424-R |
| BURD, MELINDA MARIANNE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| FIRE FIGHTERS CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 16-1037-R |
| | ) | |
| BRYAN EDWIN BURD, | ) | |
| | ) | |
| Defendant. | ) | |

Filed/Docketed
Mar 28, 2017

## ORDER GRANTING MOTION TO DISMISS
## PLAINTIFF'S AMENDED ADVERSARY COMPLAINT

Before the Court is the Motion to Dismiss Plaintiff's Amended Adversary Complaint ("Motion") (Adv. Doc. 13) filed by Defendant Bryan Edwin Burd ("Burd") on February 16, 2017, and Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support ("Response") (Adv. Doc. 14) filed by Plaintiff Fire Fighters Credit Union ("Credit Union") on February 27, 2017.

Burd and his spouse filed for relief under Chapter 13 of the Bankruptcy Code on August 10, 2016. In its initial Adversary Complaint ("Complaint") (Adv. Doc. 1), the Credit Union alleged that debts Burd owed on two promissory notes, each secured by a tractor that was purchased with the loan proceeds, should be excepted from discharge. The Credit Union asserted that Burd sold the tractors without its consent and failed to pay the sale proceeds to

the Credit Union, thus willfully and maliciously depriving the Credit Union of its rights in the collateral. The Credit Union predicated its non-dischargeablity claim on Section 523(a)(6) of the Bankruptcy Code, which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."[1] Burd sought dismissal of the initial Complaint because debts described in Section 523(a)(6) are not excepted from discharge in cases filed under Chapter 13.[2] Instead of dismissing the Complaint, the Court granted the Credit Union leave to amend it.

The Amended Adversary Complaint (Adv. Doc. 12) ("Amended Complaint") repeats the factual allegations set forth in the first Complaint, and requests that the debt be declared non-dischargeable under Section 523(a)(2)(A) (*i.e.,* debts procured by fraud) and Section 523(a)(4) (*i.e.,* debts resulting from defalcation or fraud by a fiduciary, larceny, or embezzlement). Burd moves to dismiss the Amended Complaint on the ground that the allegations fail to state a claim under either section.

**Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and (b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

---

[1] 11 U.S.C. § 523(a)(6). Unless otherwise stated, all text references to "Sections" herein relate to sections of the Bankruptcy Code, Title 11 of the United States Code.

[2] See 11 U.S.C. § 1328(a)(2).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[3] a complaint must contain sufficient factual matter, accepted as true and read in the manner most favorable to the plaintiff,[4] to "state a claim that is plausible on it face."[5]  Generally, a complaint is sufficient if it states the basis for the court's jurisdiction, provides "a short and plain statement of the claim showing that the pleader is entitled to relief," and makes "a demand for the relief sought, which may include relief in the alternative or different types of relief."[6]  If alleging fraud, however, "a party must state with particularity the circumstances constituting the fraud[.]"[7]  To state a claim for fraud, the complaint "should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants."[8]

The Credit Union alleges–

> On or about March 23, 2015, [Burd] purchased a 2004 John Deer [sic] Tractor and front end loader, financing the purchase by a loan from [the Credit Union], and granting [the Credit Union] a security interest in the collateral. The loan documents are attached [to the Amended Complaint] as Exhibit "A."

---

[3]Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), provides that a claim may be dismissed on motion if the complaint fails "to state a claim upon which relief can be granted."

[4]See also Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010).

[5]Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

[6]Fed. R. Civ. P. 8(a), made applicable to this proceeding by Bankruptcy Rule 7008.

[7]Fed. R. Civ. P. 9(b), made applicable to this proceeding by Bankruptcy Rule 7009.

[8]Material Prod. Int'l, Ltd. v. Ortiz (In re Ortiz), 441 B.R. 73, 76 (Bankr. W.D. Tex. 2010) (quotation marks and citations omitted).

On or about October 27, 2015, [Burd] purchased a 2007 Massey-Ferguson tractor, financing the purchase by a loan from [the Credit Union], and granting [the Credit Union] a security interest in the collateral. The loan documents are attached [to the Amended Complaint] as Exhibit "B."

Unknown to [the Credit Union], and prior to filing his Chapter 13, [Burd] sold the collateral to unknown third parties for cash, and failed to pay the proceeds to [the Credit Union].

None of the sale proceeds were paid to [the Credit Union], and [Burd] specifically knew he was committing a wrongful act.

[Burd] has converted the property of the [Credit Union] to his own use without the [Credit Union's] consent.

[Burd's] actions were willful and malicious and harmed [the Credit Union] by denying it the collateral securing its loan.

The debts to [the Credit Union] should be excepted from discharge under §§ 523(a)(2)(A) and 523(a)(4), and judgment should be granted against [Burd] in the amount of $36,861.81.[9]

**Analysis**

Under Section 523(a)(2)(A), a debt is non-dischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud[.]"[10] The Credit Union does not allege, nor does it argue, that its claim is based upon any particular false representation made by Burd to the Credit Union. Rather, it contends – in its Response – that the allegations depict a "scheme to defraud lenders"[11] wherein Burd obtained loans and granted purchase money

---

[9] Amended Complaint ¶¶ 3-9.

[10] 11 U.S.C. § 523(a)(2)(A).

[11] Response at 4.

4

security interests in equipment purchased with loan proceeds, all while intending to sell the equipment to generate cash for his own use.

Recently, in Husky International Electronics, Inc. v. Ritz,[12] the United States Supreme Court drew a distinction between "false representation" fraud and "actual fraud" for the purposes of 11 U.S.C. § 523(a)(2)(A), and concluded that certain traditional forms of fraud, like fraudulent conveyance schemes intended to hinder creditors, do not involve false representations but nevertheless fall within the definition of "actual fraud" under Section 523(a)(2)(A).[13] The Supreme Court further explained the elements of "actual fraud" as follows:

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." Neal v. Clark, 95 U.S. 704, 709, 24 L. Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." Ibid. Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
>
> Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. . . . There is no need to adopt a definition for all times and all circumstances here because, . . . courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that, like Ritz's scheme, impairs a creditor's ability to collect the debt.[14]

The Supreme Court tells us that it is possible to state a claim for actual fraud without identifying a fraudulent representation, and it may be that pleading a scheme of intentionally deceitful conduct taken by a defendant with the intent to harm a plaintiff might suffice.

---

[12]136 S.Ct. 1581 (2016).

[13]Id. at 1586.

[14]Id. at 1586-1587.

However, in this case, no such scheme is alleged in the Amended Complaint. In its Response, the Credit Union asserts that Burd is a "serial fraudulent actor" who has sold collateral without consent in the past[15] and that Burd sold the first tractor even before taking out the second loan,[16] but again, the Amended Complaint does not contain any allegations concerning past conduct or the timing of the sale of the tractors from which a fraudulent scheme might be inferred. "[C]ircumstances constituting fraud" must be stated with particularity in the complaint.[17]

The Credit Union argues that Burd has already been deposed, admitted to knowing it was wrong to sell the collateral, and is "well aware" of the Credit Union's position that he committed fraud.[18] This knowledge, according to the Credit Union, negates the need to plead its fraud claim under Section 523(a)(2)(A) with particularity.[19] The Credit Union does not point to, and the Court is unaware of, any authority dispensing with the requirement that the complaint itself must be clear and particular about the circumstances giving rise to the accusation of fraud. The Court concludes that the Amended Complaint fails to state a fraud claim under Section 523(a)(2)(A).

The Credit Union's other claim, under Section 523(a)(4), fares no better. Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary

---

[15]Response at 1.

[16]Id. at 1.

[17]Fed. R. Civ. P. 9(b).

[18]Response at 2.

[19]Id.

capacity, embezzlement, or larceny[.]"[20] The Credit Union contends that the behavior alleged constitutes larceny and/or embezzlement.[21] Larceny is "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert [such property] to the taker's use and with intent to permanently deprive the owner of such property."[22] Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."[23]

The Credit Union argues that Burd "stole[] the sales proceeds, and also . . . stole the original loan proceeds by executing loan documents as part of a recurring scheme to purchase and sell collateral"– conduct it claims "is certainly within any fair definition of either 'embezzlement' or 'larceny.'"[24] Neither the tractors nor the sales proceeds were ever property of the Credit Union, however.[25] Burd and the Credit Union had a contractual

---

[20] 11 U.S.C. § 523(a)(4).

[21] The Credit Union does not allege or argue that Burd acted in a fiduciary capacity.

[22] Bryant v. Tilley (In re Tilley), 286 B.R. 782, 789 (Bankr. D. Colo. 2002) (quotation marks and citations omitted).

[23] Cousatte v. Lucas (In re Lucas), 300 B.R. 526, 531 (B.A.P. 10th Cir. 2003) (quotations and citations omitted).

[24] Response at 2-3.

[25] Nor were the original loan proceeds property of the Credit Union. The Credit Union transferred the proceeds to Burd pursuant to the loan documents, and Burd used the proceeds to purchase the tractors that served as the Credit Union's collateral. In any event, the theory that Burd stole the original loan proceeds cannot be fairly inferred from the allegations set

debtor/creditor relationship governed by the loan documents. The Credit Union possessed a security interest in the tractors and their proceeds, but that interest is not one of ownership. The Credit Union's rights in the collateral are spelled out in the Security Agreements attached to the Amended Complaint. The Security Agreements provide, in relevant part:

> THE SECURITY FOR THE LOAN - You give us what is known as a security interest in the property described in the "Security" section [of the loan agreement] ("the Property"). . . . It also includes any money you receive from selling the Property or from Insurance you may have on the Property. . . .[26]
>
> OWNERSHIP OF THE PROPERTY - You promise that you own the Property or, if this Loan is to buy the Property, you promise that you will use the Loan proceeds for that purpose. . . . You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. . . .[27]
>
> DEFAULT - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, . . . or if anything else happens that significantly affects the value of the property or our security interest in it.[28]
>
> WHAT HAPPENS IF YOU ARE IN DEFAULT - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. . . . After we have possession of the Property, we can sell it and apply the money to any amounts you owe us.[29]

---

forth in the Amended Complaint.

[26] Security Agreements, fourth page of Exhibits A and B to the Amended Complaint, ¶ 1 (the two Security Agreements are identical).

[27] Id. ¶ 3.

[28] Id. ¶ 8.

[29] Id. ¶ 9.

Accordingly, the Credit Union's interest in the tractors and sales proceeds was limited to the contractual right, upon default, to sell the collateral and apply the proceeds against the debt. Burd's interest in the tractors constituted an ownership interest, and notwithstanding that he allegedly breached his agreement to not sell the tractors, the sales proceeds were also his property.[30]

Both larceny and embezzlement have as an element the taking of property of another. "One cannot embezzle [or steal] one's own property."[31] Consequently, the Amended Complaint fails to state a claim under Section 523(a)(4).

**Conclusion**

Because the Amended Complaint fails to state a claim under either Section 523(a)(2)(A) or Section 523(a)(4), the Motion is granted.

**SO ORDERED** this 28th day of March, 2017.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[30] See, e.g., Arvest Mortgage Co. v. Nail (In re Nail), 680 F.3d 1036, 1042 (8th Cir. 2012). In Nail, the Eighth Circuit held that the assignment-of-proceeds provision in a mortgage agreement "merely served as a collection device;" it did not convey proceeds to the secured party. Id. Because the debtor owned the proceeds, her failure to turn the funds over to the lender to apply against the mortgage loan "was a dischargeable breach of contract, not a non-dischargeable embezzlement." Id. (quotation marks and citation omitted). See also Tulsa Spine Hospital, LLC v. Tucker (In re Tucker), 346 B.R. 844, 852 (Bankr. E.D. Okla. 2006) (insured owned insurance proceeds, notwithstanding the execution of an "assignment of rights" in insurance benefits to the hospital); Hull v. Stefanoff (In re Stefanoff), 97 B.R. 607, 609 (Bankr. N.D. Okla. 1989) (debtor did not embezzle lender's property when he cashed out a certificate of deposit he pledged as collateral because debtor, not lender, owned the certificate of deposit).

[31] Nail, 680 F.3d at 1042 (quotation marks and citation omitted).